IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBERS **(207) 707-0298 and (828) 502-3196**, THAT IS STORED AT PREMISES CONTROLLED BY **VERIZON** | Case No.  1:23 mj 00056 JCN<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Abby M Mathieu, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone assigned call numbers (207) 707-0298

and (828) 502-3196, ("the SUBJECT PHONES"), that is stored at premises controlled by

Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley

Road Bedminster, NJ 07921.  The information to be searched is described in the following

paragraphs and in Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies

of the information further described in Section I of Attachment B.  Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review

the information to locate items described in Section II of Attachment B.

2.       I am a Special Agent (SA) with Homeland Security Investigations (HSI), and

have been since 2019.  Since September of 2019, I have been assigned to conduct investigations

of crimes where computers and the Internet are used in the sexual exploitation of children,

including (but not limited to) violations of 18 U.S.C. Sections 2252, 2251, 2422, 2250 and

2252A, which prohibit a person from knowingly producing, transporting, receiving, distributing, producing, enticing, soliciting, possessing or accessing with intent to view, in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, child pornography, as defined in 18 U.S.C. Section 2256(8). I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. Specifically, I have received formal training through HSI and other agencies regarding child pornography, pedophile behavior, collectors of obscene material, and Internet crime. I have participated in the execution of numerous search warrants, of which the majority has involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, electronic media, and other items evidencing violations of federal laws. I have participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. I have also participated in numerous arrests and interviews of subjects involved with child exploitation and/or child pornography.

3. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2252, 2250, 2251, 2422, and

2

2252A. all have been committed by Jon HALL. There is also probable cause to search the information described in Attachment A for evidence related to these crimes, as described in Attachment B.

## **PROBABLE CAUSE**

### NEWPORT TABLET INVESTIGATION

6.    On 06/17/2021, Task Force Officer (TFO) Taylor Bagley met with Newport Police Officer Amanda Loeven at the Newport Police station. Officer Loeven was investigating a male suspect identified as Jon Hall, who at the time, resided at ███████ in Newport. Officer Loeven had learned that Hall was on the Maine Sex Offender Registry and was required to register in Newport but had not since moving to Newport from Lewiston.

7.    Officer Loeven explained she has investigated two recent incidents involving Jon Hall as a suspect in alleged sexual misconduct involving teenagers, 21N-01427 and 21N-01774:

8.    In 21N-01427, Hall had been accused of harassing local juveniles identified as "Victim B" (age 15) and "Victim A" (age 15).[1] "Victim B" and "Victim A" reported that Hall would often grab their buttocks and solicit them for nude images of themselves in return for money. Officer Loeven spoke with Jon Hall who denied the accusations but admitted that he currently resided at ███████ in Newport.

---

[1] The victim's were named in the report and I know the names. In order to protect their identity "A" and "B" will be used in this affidavit.

9.      In 21N-01774, Officer Loeven spoke with a male complainant, who reported being a prior roommate of Jon Hall.  The complainant came into the Newport Police station to make a complaint against Jon Hall regarding sexual abuse of children as well as possession of child pornography.  The complainant provided Officer Loeven the tablet later identified as evidence item 1 during this incident.  The complainant reported the tablet belonged to Hall and that the complainant had found sexually explicit material of children on the tablet.  Officer Loeven requested assistance in investigating Hall's tablet.  TFO Bagley took custody of Hall's tablet from Officer Loeven and submitted the tablet into State Police evidence at the Computer Crimes Unit located in Vassalboro.  The tablet was titled as evidence item #1.

10.     On 07/02/2021, TFO Bagley researched Hall's criminal history and found that he had been convicted for Possession of Sexually Explicit Material of Minors under the age of 12 years old in April of 2015.  Hall also had convictions for Unlawful Sexual Contact in 2011 and Unlawful Sexual Touching in 2010.

11.     On 07/06/2021, TFO Bagley presented a search warrant for evidence item #1, Hall's tablet, to Justice Ann Murray at the Penobscot Judicial Center.  Justice Murray reviewed and signed the warrant, authorizing the search of evidence item #1.

12.     Computer Forensic Analyst (CFA) Victoria Brennan was assigned to forensically examine the tablet.  CFA Brennan found several images and videos of sexually explicit material of a young male child approximately 12 to 14 years in age.

13.     In examining evidence item # 1, CFA Brennan discovered that the tablet had sent email using the addresses of ███████@gmail.com and ███████@gmail.com.  CFA Brennan

4

found evidence that the application Snapchat had been downloaded from the Google Play Store

and installed on the device on 6/3/2021. CFA Brennan found evidence that the email addresses

████████@gmail.com and ████████@gmail.com were associated with signing into the

Google Play Store application on the same date that Snapchat was downloaded onto evidence

item number one.

14. On 03/04/2022, Nokomis High School Assistant Principal sent Newport Police

Officer Amanda Loeven school yearbook pictures of two students known to commonly associate

with Jon Hall; students "Victim A" and "Victim B", as identified earlier in this affidavit. In

viewing the picture of "Victim A", TFO Bagley found that he resembled that of the male child

depicted in the images and videos found on evidence item #1.

15. On 03/28/2022, TFO Bagley met with "Adoptive Parents A", the legal adoptive

parents of "Victim A". "Adoptive Parents A" explained how they had adopted "Victim A" in

2019. They stated that "Victim A" had been sexually abused earlier in his life by his biological

father.

16. "Adoptive Parents A" stated that they believed "Victim A" was possibly

homosexual and that they grew concerned when "Victim A" started hanging out with an older

male whom they identified as Jon Hall. Hall would give "Victim A" money, a cellphone,

tobacco vapes and other gifts. "Adoptive Parents A" later heard that Hall was homosexual and

believed he was being too friendly with "Victim A". "Adoptive Parents A" told Jon Hall to not

come back to their house and to stop hanging out with "Victim A".

17.     TFO Bagley showed "Adoptive Parents A" a portion of picture files found on evidence item #1 of the male child masturbating on a bed believed to be "Victim A". The pictures TFO Bagley showed had been cropped to avoid showing any graphic portion of the image, all that could be seen was the Victim's face and a portion of the bedroom he was in. "Adoptive Mother A" viewed the image and stated the male child resembled "Victim A".

18.     On 04/08/2022, TFO Bagley met with Victim A. TFO Bagley showed Victim A a portion of the video file of sexually explicit material found on evidence item 1. Victim A stated that the boy in the video was him, that he took the video himself and that he was 12 years old at the time he produced the video. Victim A stated that it is possible that he sent the video of himself to Jon Hall but he does not remember. Victim A stated that if he had sent the video to Hall it would have been because he would have likely been offered something in return from Hall.

19.     Victim A stated Hall made numerous sexual advances on him in the past; touching his inner thigh and requesting Victim A send him nude images of himself. Victim A stated that Hall would buy Victim A and his friends gifts such as alcohol, vapes and other items as a means of getting them to send Hall nude images of themselves.

## SNAPCHAT AND INSTAGRAM CYBERTIP INVESTIGATIONS

20.     The Maine State Police Computer Crimes Unit received three separate CyberTips between 07/13/2021 and 09/23/2021 from the National Center for Missing and Exploited Children (NCMEC). CyberTipline Report Numbers 91796927 and 96574514 were reported by Electronic Service Provider (ESP) Snapchat, while CyberTipline Report Number 99290888 was

6

reported by ESP Instagram.  Both Snapchat and Instagram CyberTips were reported to NCMEC

in accordance with federal law, 18 U.S.C.A. § 2258A.

21.     Snapchat is a multimedia messaging app developed by Snap Inc., originally

Snapchat Inc. One of the principal features of Snapchat is that pictures and messages are usually

only available for a short time before they become inaccessible to their recipients.

22.     Instagram is a free photo and video sharing app available on iPhone and Android.

People can upload photos or videos and share them with their followers or with a select group of

friends. They can also view, comment and like posts shared by their friends on Instagram.

Anyone 13 and older can create an account by registering an email address and selecting a

username.  Instagram is owned and operated by Facebook.  Facebook and Instagram accounts

can be linked together into one account, which shares a username. (reference

www.instagram.com as accessed on 03/25/2022)

23.     NCMEC is a nonprofit organization that provides services to families and

professionals that relate to the abduction and sexual exploitation of children. NCMEC also

operates the CyberTipline and the Child Victim Identification Programs to assist law

enforcement officers and others in identifying and rescuing victims of child exploitation and

child pornography.  As part of the NCMEC directives, the NCMEC works with electronic

service providers (ESP) and remote computing service providers, such as Facebook, to reduce

the dissemination of child pornography images and or videos on the internet.  When an ESP

becomes aware of suspected child pornography images and/or videos, the ESP representative

may view the images and/or videos in question to determine if the images and/or videos is child

pornography and thus a violation of the ESP use agreement with the user(s).   If the image and or

video is deemed by the ESP representative to be child pornography, the ESP will file an electronic report with the NCMEC. The reporting ESP will provide in the NCMEC report samples of the child pornography images and/or videos, IP addresses[2] captured at the date and time of the child pornography file being uploaded by the user, and any registration information (if available). NCMEC will then research more publicly available information based on the information provided to them by the ESP to determine, if possible, the identification and or geographic location of the user uploading the child pornography images and or videos in order to forward the report to the appropriate jurisdiction. NCMEC will then forward their report to the Regional Internet Crimes Against Children (ICAC) commander for further investigation. The Maine Computer Crimes Unit is the regional ICAC for Maine.

24.      On 05/12/2021, NCMEC received CyberTip report #90092957 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case Snapchat captured a user uploading one video file of sexually explicit material. Snapchat reviewed the uploaded file. Snapchat reported the username on the suspect account was "jonhall93". Snapchat reported an email address of ██████████@gmail.com and a phone number of ███████5240 as being listed as the verification contact information for the user of the account.

---

[2] *Internet Protocol Number* (IP) An IP is a unique numerical label assigned to each device (e.g., computer, printer) participating in a computer network that uses the Internet Protocol for communication. IP addresses are usually written and displayed in human-readable notations, such as 172.16.254.1 (IPv4), and 2001:db8:0:1234:0:567:8:1 (IPv6). Every machine that is on the Internet has an IP number. Every location has a unique IP number.

25.     In CyberTip 90092957 the user uploaded a video file titled as "*jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4*" on the date of 05/08/2021 at 22:06:46 Hours UTC.

26.     Snapchat did not provide an IP Address used during the upload of the contraband video file but did provide an IP Address used to log into the suspect account six days prior to the upload of the video. The IP address of 172.100.85.95 was used on 05/02/2021 at 22:06:46 Hours UTC to log into the suspect account. The IP address was used by Charter Communications, also known as Spectrum. A subpoena was issued to Charter Communications for subscriber information for the subscriber assigned to the IP address of 172.100.85.95 on 05/02/2021 at 22:06:46 Hours UTC. On 06/14/2021 Charter Communications identified the subscriber as L P          with a residence of                    Augusta, Maine.

27.     TFO Bagley viewed the video file titled as "*jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4*". The video file is of an adult male having anal sexual intercourse with a male child. Both the adult and child are completely naked. Room settings such as bed sheets and pillow are shown in the video. The video appears to have been made by a camera held by the adult male pointing down towards the child to capture the sexual act. The adult male has the child's arms restrained behind the child's back while a pillow is covering the child's head as he lay face down on the bed. TFO Bagley estimated the age of the male child to be 10 to 12 years of age based on lack of body hair, muscle growth and overall body growth, development and size in comparison to the adult male shown in the video.

28.     On 05/31/2021, NCMEC received CyberTip report #91796927 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case, Snapchat captured a user uploading 2 files of

sexually explicit material. Snapchat reviewed the uploaded files. Snapchat reported the username on the suspect account was "jon_e5143". Snapchat reported that the suspect account had a phone number of ████3037, and a listed date of birth of ████1993.

29.     Snapchat reported that their staff had viewed the entire contents of both video files provided in CyberTip 91796927. TFO Bagley viewed both videos and confirmed both were sexually explicit material of minors consisting of file names:

     a.  "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-
         25581b6598.mp4"

         i.  TFO Bagley viewed video file "jon_e5143-None-28cda07d-fdab-5067-
             b4f4-f624e7c525ee~39- 25581b6598.mp4". The video file depicted two
             male children, approximately 10-12 years in age, exposing their genitals
             and performing oral sex on each other. TFO Bagley estimated the age of
             the boys based on overall body structure and size as well as lack of pubic
             hair growth and development.

     b.  "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-
         74e99ed7cf.mp4".

         i.  TFO Bagely viewed video file "jon_e5143-None-28cda07d-fdab-5067-
             b4f4-f624e7c525ee~39- 74e99ed7cf.mp4". The video file depicted a male
             child, naked on a bed, while an adult male engages in anal sexual
             intercourse with the child. TFO Bagley estimated the age of the male
             child as being 10-12 years in age due to overall size and development of

the body and genitals, as well as lack of pubic hair growth.  The size of the child in comparison to the adult male is also relevant to the estimation of age of the child.

30.     On 06/02/2022 TFO Bagley presented Google, Snapchat and Instagram search warrants related to this investigation, consisting of the much of the same affidavit, to Justice Roberts at the Penobscot Judicial Center.  Justice Roberts reviewed the search warrants and images described above and signed all three account search warrants.

31.     On 09/23/2021, Planning and Research Associate (PRA) Jared Pingree began an investigation into CyberTip # 91796927, learned, and relayed that Snapchat account username "jon_e5143", with phone number ███████-3037 and a listed date of birth of ██████1993; had uploaded the two video files of a child being sexually exploited, described in paragraph 34, on the date of 05/27/2021.   Snapchat reported that the two video files were uploaded by the suspect account on 05/27/2021 at 12:01:43 Hours UTC and 12:01:31 Hours UTC.

32.     Snapchat did not provide an IP address for the upload of the video files but did provide an IP address for a login to the suspect account occurring on 05/13/2021 at 21:48:44 Hours UTC from an IP address of 2600:387:c:2c12::142, two weeks prior to the upload of the video files.  Upon researching the IP address of 2600:387:c:2c12::142 I learned that it was a cellular IP address belonging to AT&T Wireless.  TFO Bagley contacted AT&T who advised they do not retain any subscriber information in relation to cellular IP addresses.

33.     Snapchat did however provide a phone number for the suspect account which was ███████-3037.  PRA Pingree researched the phone number through an open-source phone

number locator called ZetX. ZetX is a free phone lookup provided to law enforcement. The

search provided the phone carrier as US Cellular. On 09/27/2021 Assistant Attorney General

Paul Rucha issued a subpoena to US Cellular for the subscriber records of the cellular phone

account of ███████-3037.



34.    On 10/13/2021, US Cellular responded to the subpoena identifying the phone

number of ██████3037 as belonging to the account of C██████ W█████████ of

██████ Norridgewock, Maine. Also on the phone account was an A██████ S███████ and H████

W█████     Three other phone numbers were listed on the account including ███████5108,

████-1839 and ████████1156, though only three persons names were provided. A second

address was listed on the account of ██████████████Randolph, Maine. [As explained

below, C█████ W████████was a roommate of Hall in Norridgewock.]

35.    PRA Pingree researched the address of ███████████ Norridegwock, Maine

using TLOxp, which is a commercially available, subscription-based database service offering

access to law enforcement officers in the course of performing their duties. PRA Pingree found

several persons listed as residing at ██████████ in Norridgewock which included:

36.    Jon A. Hall, date of birth of ██████1993. The name Jon Hall was similar to that of

the suspect Snapchat account username of "jon_e5143", whose listed date of birth on the account

was ████/1993; same first name, month and year. Hall had a current address of ███████████

████████████Morganton, NC, and several former addresses including ████████████

Norridgewock, ME. Hall had numerous phone numbers associated with him including ████████

████-8077.

37.    PRA Pingree researched the Maine Sex Offender Registry and found that Jon Alan Hall, date of birth ███ 1993 was a lifetime registrant for convictions of Possession of Sexually Explicit Material of a Minor under 12 years old.

38.    PRA Pingree researched the Spillman database; a record keeping system used by Maine law enforcement. A name file for Jon Hall, date of birth ███ 1993, listed Hall as residing at various residences in Chelsea, West Gardiner and at ███ in Newport, consistent to Newport Police investigations. Penobscot County Spillman, used by local municipalities and Sheriff Office departments had numerous involvements in 2021 with Hall listed as residing at ███ in Newport.

39.    As TFO Bagley searched through the Spillman database TFO Bagley observed Hall had numerous involvements in Penobscot, Sagadahoc, Kennebec and Somerset counties. These involvements primarily included Hall having inappropriate and sexually focused contact with young boys within the age range of 12 to 14 years old. Numerous police reports documented Hall associating with young boys, sexually abusing young boys and soliciting young boys for sexual acts and sexually explicit materials. These reports ranged in time from 2019 through 2021.

40.    State Police Spillman listed several investigations against Hall of a sexual manner.

c.    Incident 06Y004319 (2006), documents allegations made against Hall when he was 12-years old, forcing a 5-year-old boy to perform oral sex on Hall

d.  Incident <u>14U332</u> (2014), Maine State Police Computer Crimes Unit investigated and charged Hall with Possession and Dissemination of Sexually Explicit Material of a Minor (under 12 years of age).  The investigation revealed numerous past juvenile convictions for Unlawful Sexual Contact and Unlawful Sexual Touching.

e.  Incident <u>20S054370</u> (2020), Maine State Police Major Crimes Unit investigated Hall for soliciting several boys for oral sex in exchange for money as well as sexually molesting them.

f.  Incident <u>21S001241</u> (2021), Maine State Police Major Crimes Unit investigated Hall for sexually molesting a 15-year-old boy.  In this investigation Det. Moore of the Major Crimes Unit learned that Hall had been contacting the victim through a Facebook account with a username of "Jon Evans", consistent to that of the Instagram CyberTip 99290888.  In an interview with Hall reference this MCU investigation, separate from his involvement with Facebook, Hall admits to Detective Moore that Snapchat had banned his Snapchat account, showing a connection and suspension to Snapchat is consistent with Snapchat reporting two accounts suspected of belonging to Hall as reported in CyberTips 91796927 and 96574514.

41.     In the second Snapchat CyberTip report, on 07/27/2021, NCMEC received CyberTip report #96574514 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case, Snapchat captured a user as uploading 3 files of sexually explicit material. ESP Snapchat reviewed all uploaded files.  Snapchat reported the username on the suspect account was

14

"jon_david330". Snapchat reported that the suspect account had a phone number of ▮▮▮▮

4295, and a listed date of birth of ▮▮▮ /85.

42.    In CyberTip 96574514, Snapchat identified 3 videos of sexually explicit materials

of a minor which were uploaded by the suspect account on 07/26/2021 at 21:44:41 Hours UTC.

Snapchat staff reviewed the contents of all three videos prior to reporting to NCMEC. TFO

Bagley viewed all three videos and confirmed they were sexually explicit material of a minor.

43.    On 08/28/2021, NCMEC received CyberTip report #99290888 from Instagram, as

required by 18 U.S.C.A. § 2258A. In this case, Instagram captured a user as uploading 1 file of

sexually explicit material and one image Instagram identified as the profile picture of the suspect

account. ESP Instagram did not review the content of the file. Instagram reported that the

account used the screen name "Jon Evans", the email address of ▮▮▮▮▮▮ @gmail.com , a

username of "jon.hall.1993" and a phone number of ▮▮▮▮ -3037. The email address of

▮▮▮▮▮ @gmail.com is consistent with the email address found on evidence item #1.

44.    Instagram reported that user "Jon Evans" had uploaded and disseminated the

reported sexually explicit material to an Instagram user identified as username "Ian_dview" on

07/01/2021 at 04:35:13 Hours UTC.

45.    Instagram reported that their staff had not viewed the one reported video file but

found that it had a hash match of a previously confirmed video file of sexually explicit material

of a minor. Instagram categorized the video file as A1, which is categorization of a prepubescent

minor engaged in a sexual act.

46.     On 02/15/2022 TFO Bagley presented a search warrant to Justice Stokes at the Kennebec Judicial Center to view the video file and profile picture provided in CyberTip 99290888.  Justice Stokes reviewed and signed the warrant authorizing Bagley to view the video file.  TFO Bagley viewed the video file provided in CyberTip 99290888 and titled as "Pp4dBCi66rLFhuve211199298_244745450433107_568270821990973733_n.mp4" and confirmed it was sexually explicit material of a minor.  TFO Bagley  also viewed the profile picture and found that it was that of a cemetery, with no identifiable feature.

47.     On 01/10/2022, TFO Bagley contacted the Maine Sex Offender Registry representative Kathy Holt.  Holt researched Jon Hall in the sex offender registry database and advised that Hall had left Maine and moved to North Carolina, where he registered with the North Carolina Sex Offender Registry on 12/07/2021 and sent notice to Maine Sex Offender registry on 12/13/2021.  Hall had registered his address with the North Carolina Sex Offender Registry as ▆▆▆▆▆▆▆▆▆▆ Morganton, North Carolina 28655.  Hall provided a phone number of ▆▆▆-8077 as his personal phone number on his North Carolina sex offender registration.  In running Hall's information through Spillman TFO Bagley found that the North Carolina Sex Offender Registry had an email address for Hall on his Sex Offender Registry name file of ▆▆▆▆▆@gmail.com, consistent to that provided in Instagram CyberTip 99290888, evidence item #1 and that of Hall's TLOxp name file.

North Carolina Sex Offender Registry:

48.     On 05/06/2022, TFO Bagley spoke with Lt. Shelly Hartley of the Caldwell County Sherriff's Office in North Carolina.  Lt. Hartley advised that she had received an informational tip from the United States Marshall Service, Marshall Joe Cowan, concerning a

sex offender residing in Caldwell County and not registering as a sex offender. Marshall Cowan reported having received information from the Maine State Police Computer Crimes Unit concerning suspect Jon Hall, who was the main suspect in NCMEC CyberTip 96574514. Marshall Cowan found Hall's employer at Porta Jon Service who confirmed Hall's employment. Marshall Cowan did not make contact with Hall and thus reported Hall's failure to register to the local sex offender registry, which is the Caldwell County Sheriff's Office, which Lt. Hartley supervises.

49.     Lt. Hartley investigated Hall's Failure to Register and ultimately obtained an arrest warrant for Hall for Failure to Register as a Sex Offender. On 12/06/2021, Jon Hall was arrested by the McDowell County Sheriff's Office, as reported in McDowell Sheriff's Incident Report 2021-03482. The following day, 12/07/2021, Hall registered as a sex offender with the Caldwell County Sheriff's Office, listing ███████████████████ Lenoir, North Carolina 28645. Upon registering with Lt. Hartley, Hall reported to her that he had friends in Burke County; which he later registered in.

50.     Jon Hall registered as a sex offender with the North Carolina Sex Offender Registry in Caldwell County and then soon re-registered in Burke County with the Burke County Sheriff's Office. TFO Bagley spoke with Robin Jennings of the Burke County Sheriff's Office who oversees the sex offender registry for Burke County. Jennings reported that Jon Hall listed a residential address of ██████████████ in Morganton, North Carolina and reported a phone number of ███████-8077 as being his contact phone number. TFO Bagley further found that in reviewing Hall's active sex offender registry information, that he had listed the Google Gmail account of ██████████@gmail.com as being his account to contact.

51.     Jennings stated that the Burke County Sheriff's Office had last made contact with

Jon Hall on 03/15/2022 at ███████████████ in Morganton.  Detective Penny Smith was

the primary investigator for the contact.

<u>North Carolina ICAC CyberTip 110495549:</u>

52.     TFO Bagley spoke with Detective Penny Smith and Det. Lowdermilk of the

Burke County Sheriff's Office.  Detectives stated that their agency was assigned a NCMEC

CyberTip of 110495549 from ESP Instagram.

    g.  The North Carolina ICAC office was assigned CyberTip 110495549 on

        01/12/2022.  The CyberTip was then assigned to Det. Lowdermilk.  In reviewing

        the CyberTip, Instagram reported to NCMEC on 12/12/2021 that a user with

        USER ID 48667462858 had uploaded one video file of sexually explicit material

        of a minor.  Instagram also provided the profile picture to the suspect account.

        Neither the video nor image file were reported to have been viewed by Instagram

        staff prior to reporting to NCMEC.

    h.  Instagram reported that the user's account information as follows:

        i.   Name: Z███ H███

        ii.  Phone: █████-8077

        iii. Email Address: ███████@gmail.com

        iv.  Screen/User Name: zackaryhall1993

        v.   ESP User ID: 48667462858

53.    The phone number ███████-8077, is consistent with that identified as belonging to Jon Hall and provided by Hall to the North Carolina Sex Offender Registry.  The email address of ███████@gmail.com is consistent with the username of "Jon Evans" as reported by Instagram in CyberTip 99290888.

54.    In my experience investigating cyber-crime, I have learned that devices that are actively signed into a Google account give access to Google to monitor activity by the device itself.  Image and video files uploaded, location data, internet search history and message content are a few examples of data monitored and saved by Google when synced with a device.

55.    On May 18, 2022 TFO Bagley made a preservation request for the Google accounts of ███████@gmail.com ███████@gmail.com , ███████@gmail.com and ███████@gmail.com.  The assigned Google case number associated with the preservation requests is 18738827.

56.    On May 18, 2022 TFO Bagley made a preservation request for the Instagram accounts of ███████@gmail.com , ███████@gmail.com , ███████@gmail.com and ███████@gmail.com.  The assigned Instagram case number associated with the preservation requests is 6955597.

57.    On May 18, 2022 and May 27, 2022, TFO Bagley made a preservation request for the Snapchat accounts of usernames "jon_e5143", "jon_david330" and "jonhall93".  The assigned Snapchat case numbers associated with the preservation requests is 1401a064a2 and 38f165d03a.

58.     On June 2, 2022, TFO Bagley presented search warrants for the Google, Instagram and Snapchat accounts mentioned in this affidavit to Judge Roberts, who reviewed and signed the warrants for Google, Snapchat and Instagram.  TFO Bagley submitted the signed search warrants to Google, Snapchat and Instagram and received account records from Snapchat and Instagram.

59.     In reviewing the Instagram records of Hall's accounts TFO Bagley found communication between Hall and other users believed to be children.  In those communication messages Hall solicits male children to send him sexually explicit images and videos of themselves to Hall.  A portion of the Instagram communications showed Hall offering to purchase pre-paid online gaming cards, referred to as "Shark Cards", for the children in return for nude images and videos.  Hall also had conversations with recipients regarding paying recipient users via the "Cash App" online application.

60.     Google responded on June 13, 2022 that the signed search warrant required Google to make subjective or relevance determinations.  After referring to Assistant Attorney General Paul Rucha regarding the issue reported by Google, TFO Bagley removed language in the initial Google search warrant and presented a revised Google search warrant to Judge Michael Roberts on 06/14/2022.  Judge Roberts signed the search warrant and a copy of the revised signed warrant was submitted to Google on 06/15/2022.

61.     Google responded with a large amount of account records for all four Google accounts requested.  Computer Forensic Analyst Victoria Brennan was assigned the Google account records to examine and process through Axiom, a computer forensic software allowing for easier navigation and parsing of high volume digital records.

20

62.     As CFA Brennan processed the Google records she identified the Google account

of ▓▓▓▓▓▓@gmail.com as containing evidence relevant to this investigation into Jon Hall.

Part of that evidence found on the account records of ▓▓▓▓▓▓@gmail.com was a

substantial amount of sexually explicit material of male children.

63.     TFO Bagley informed CFA Brennan that he had found communications between

Hall and other male individuals, believed to be children, where Hall had offered to purchase pre-

paid online gaming cards, referred to as "Shark Cards", if the children provided Hall with

sexually explicit material of themselves to him.

64.     TFO Bagley also informed CFA Brennan that he had found communication

between Hall and other male individuals where Hall offered to send the male individual money

via the Cash App online application.[3]

65.     With CFA Brennan being advised of references to "Cash App" and "Shark

Cards," she searched for content related to those terms as to find any data relevant to the

communications found on Hall's Instagram account records.  CFA Brennan advised TFO Bagley

that she had found a large amount of Cash App receipts, showing money sent from Hall's

account to other recipients.  CFA Brennan stated she had found messages sent from Hall and to

---

[3] a.     Cash App is a mobile payment service developed by Block, Inc., that allows users to transfer money to one another using a mobile-phone app. The service is available only in United Kingdom and the United States. (ref: https://www.google.com/search?q=what+is+cash+app&rlz=1C1GCEA_enUS880US880&ei=mgPPYuiYNK-liLMPheGF4AE&ved=0ahUKEwjozYbGtPb4AhWvEmIAHYVwARwQ4dUDCA4&uact=5&oq=what+is+cash+app&gs_lcp=Cgdnd3Mtd2l6EAMyCAgAEIAEELEDMggIABCABBCxAzIFCAAQgAQyBQgAEIAEMgUIABCABABDIFCAAQgAQyBQgAEIAEMgUIABCABDIFCAAQgAQyBQgAEIAEOgcIABBHELADOgUIIRCgAToFCCEQqwI6CAghEB4QFhAdOgUIABCRAjoLCAAQgAQQsQMQgwE6CAgAELEDEJECOggIABCxAxCDAToICC4Qg AQQsQNKBAhBGABKBAhGGABQpwNYuzJgizRoAnABeAGAAZQBiAG2F5IBBDcuMjCYAQCgAQHIAQjAAQE&sclient=gws-wiz as of 07/13/2022)

Hall referencing money sent from Hall's Cash App account; and those messages showed Hall's account soliciting the recipients for sexually explicit material of the recipient user. CFA Brennan stated that the recipient users receiving money and messages from Hall's account had account profile pictures that appeared to demonstrate the recipient users were children.

66.     TFO Bagley asked CFA Brennan if any location information was provided in the records. CFA Brennan stated that there was location information provided by Google to the extent where she could see the account user's location in the metadata connected to internet artifacts such as internet searches and websites visited.

67.     CFA Brennan stated that all evidence of sexually explicit material, location data and financial data was found on the account of ███████@gmail.com and no other associated account covered in the original Google search warrant.

68.     With this information provided to TFO Bagley by CFA Brennan TFO Bagley reviewed his signed Google search warrant and found that it did not cover financial or location data of the user's account. TFO Bagley advised CFA Brennan to stop her examination and he applied for a new warrant covering financial and location data.

69.     The Google records, which included the records related to the location and financial records were physically located on Computer Crime Unit servers in Vassalboro, Maine. On 07/14/2022 TFO Bagley presented a search warrant for location and financial records of the Google return to Justice Stokes. Justice Stokes reviewed and signed the search warrant on 07/14/2022. After the warrant was signed, TFO Bagley contacted CFA Brennan and advised her to continue with her forensic examination into the records and provided her with a copy of the

signed search warrant.   In total, there were three signed Google search warrants with one records response from Google.

70.     CFA Brennan continued her forensic examination of the records provided by Google and located records on the Google account of ████████@gmail.com related to the use of CashApp as well as location information showing the use of the ████████@gmail.com account in Maine and North Carolina.  The account was used in Maine during the months of May 2021 through July of 2021 and used in North Carolina in the months of July 2021 through May of 2022; consistent with the information learned through the course of this investigation.

71.     On 08/25/2022 TFO Bagley was contacted by Maine State Police Corporal Chris Rogers.  Cpl. Rogers advised that N██ P███, owner of the Four Corners Store in Gardiner had reported to Cpl. Rogers that a man named Jon Hall was living in a house across the street from the store.  P███ reported to Cpl. Rogers that Hall was a known offender on the Sex Offender Registry and that he was living in the residence with several children.  ████ stated Hall had come into the store on 08/25/2022 and made her feel uncomfortable.  P███ directed Cpl. Rogers to Hall's residence located across the street from the store.  Cpl. Rogers identified the residence as being ████████████ in West Gardiner.

72.     Cpl. Rogers called the Gardiner Town Office and spoke with Town Clerk Angela Phillis.  Phillis confirmed that Hall had been into the Town Office on 08/25/2022 with a female identified as M██ T███.  T████ was registering a vehicle, ME PC ██████, a silver 2015 Chevrolet Tahoe with a registered address of ████████████, West Gardner, Maine.  Town Clerk Phillis knew Hall and knew him to be a sex offender.  Phillis spoke with Hall to

ascertain if he was going to register in Maine. Hall told Phillis that he was moving back to Maine.

73. On 08/26/2022, TFO Bagley along with Agents from Homeland Security Investigations (HSI) were conducting surveillance on suspect Jon Hall, pursuant to a separate investigation into child pornography investigated by the Maine State Police Computer Crimes Unit and Homeland Security. The investigation into child pornography is documented in Maine State Police incident 21S030589. Pursuant to 21S030589 TFO Bagley had obtained a search warrant for the residence of ███████████ in West Gardiner along with the person of Jon Hall. The search warrant, signed by Justice Brent Davis on 08/26/2022, allowed for the search of Jon Hall's person, wherever he may be located in the State of Maine as well as the residence of ███████████.

74. On 08/29/2022 TFO Bagley along with Special Agent Laurie Northrup conducted surveillance on the residence of ███████████ in West Gardiner. As we set up surveillance on the residence, TFO Bagley observed several people exit the residence and enter a Chevrolet Tahoe; TFO Bagley did not see the operator.

75. TFO Bagley watched as the Tahoe, ME BC███████, backed out of the driveway and onto Townhouse Road. The vehicle crossed the intersection and entered Sears Corner Road. TFO Bagley knew that Kennebec County Sherriff's Deputy Phil Lynch was parked down the road. TFO Bagley called Deputy Lynch and advised him that the vehicle had left and there was an unknown driver. TFO Bagley asked Deputy Lynch to find an independent violation to stop the vehicle in hopes of identifying who the driver was without compromising the primary surveillance mission.

76.     While speaking with Deputy Lynch over the phone he advised that he could see the suspect vehicle and that it did not have a front license plate, as required by Maine Law in Title 29-A Section 452.  Deputy Lynch followed the vehicle as it turned left onto Lewiston Road. Deputy Lynch initiated a traffic stop on Lewiston Road.  Special Agent Northrup and TFO Bagley arrived soon after.

77.     Upon TFO Bagley's arrival to the traffic stop Deputy Lynch was already walking back from the suspect vehicle with several license cards in his hand.  Deputy Lynch advised that Jon Hall was the operator of the vehicle.  Special Agent Northrup and TFO Bagley immediately went to the driver seat of the vehicle.  TFO Bagley recognized the driver of the vehicle as being Jon Hall from his driver's license photo along with social media photos.  Hall was actively talking on an Apple iPhone that he was holding.  TFO Bagley could see on the screen of the phone that it read "Mom".  Hall told TFO Bagley that he was speaking to his mother.

78.     TFO Bagley seized and placed Hall's cellphone into airplane mode. TFO Bagley secured the phone in his cruiser and placed it into a faraday bag.  Hall's Apple iPhone was placed into evidence and titled as evidence item 2.

79.     TFO Bagley reapproached Hall and his occupants and first spoke with the female in the vehicle, identified as M███ T███. T███ stated that Hall had been staying with her at her residence for the last couple days.  T███ stated that she only saw him with the Apple iPhone that he had in his possession.  T███ stated that Hall had been sleeping in her living room while staying at her residence.

80.     Hall stated that the only device he brought with him back to Maine from North Carolina was his Apple iPhone.  Hall denied having any old phones or any Android phones.  Hall stated that he was actually preparing to trade in his current iPhone and purchase a new Apple iPhone 13 ProMax.

81.     Hall asked if he was free to leave because he had to transport M███ to work.  At this time TFO Bagley placed Hall under arrest for Violation of Conditions of Release for not providing a correct address on his bail conditions.  Hall argued the decision to arrest.  Hall also refused to answer any questions without speaking to an attorney.

82.     Kennebec County Deputy Sherriff York arrived on scene.  TFO Bagley transferred custody of Hall to Deputy York who transported Hall to the Kennebec County Jail where he was booked and charged with Class E Violation of Conditions of Release.

83.     TFO Bagley along with several other Special Agents returned to ███████ in West Gardiner with homeowner M███ T███ to execute the residence portion of the search warrant.  T███ guided us inside to the Livingroom where she pointed out a recliner which she identified as the place Hall had been sleeping while staying in her house.  TFO Bagley observed an Apple iPhone charger inside the recliner cushion along with a green suitcase next to the recliner.  TFO Bagley opened up the suitcase and found several pairs of male's pants and underwear.  The pants were all the same size, 42x32, and were of a large size consistent to that of Jon Hall.  The other male, K███ B███, was very small and only weighed 130 pounds.  B███ and T███ both were shown the green suitcase, both denied ownership of the suitcase.  A further search of the suitcase revealed a Motorola cellphone placed in the front pocket.  Both T███ and B███ denied ownership or knowledge of the phone.

26

84.     TFO Bagley photographed the residence, the living room recliner, the suitcase, the clothing in the suitcase and the cellphone found in the suitcase.  TFO Bagley seized the Motorola cellphone and placed it into evidence, where it was titled as evidence item 3.  TFO Bagley provided M███ T█████ with a copy of the search warrant and inventory.

85.     Special Agent Mathieu and TFO Bagley responded to the Kennebec County Jail where we met with Jon Hall in booking.  TFO Bagley issued Hall a copy of the search warrant and inventory form.  TFO Bagley did not ask Hall any questions but did explain what we had taken from the residence.  Hall identified the suitcase as belonging to him and that all he had in it was his clothing.  When Hall was told of the Motorola cellphone located in the suitcase, he denied knowing the phone was in there and stated that his roommate, A███ S█████ had packed his bag and must have put it in there.

86.     Special Agent Mathieu and TFO Bagley cleared the jail at this time.  TFO Bagley transferred custody of the two phones, identified as evidence item numbers 2 and 3, to Special Agent Mathieu.  Special Agent Mathieu transferred custody of the phones to Special Agent Kelly who began a forensic examination on the two devices.

87.     With Hall arrested and confined at Kennebec County Jail, TFO Bagley submitted his Probable Cause report to the Kennebec Jail intake later in the day of 08/29/2022. Jail staff confirmed receipt of the report.  On 09/01/2022 TFO Bagley was advised that Kennebec Jail staff had released Hall from the facility.  TFO Bagley spoke with Jail staff and was advised that they had forgot to send his Probable Cause report to a Judge within 48 hours of Hall being admitted into the jail.  Since Hall's Probable Cause was not reviewed within 48 hours by a Judge, Jail staff released him from custody without charge and without any pending court date.

88.     On 09/02/2022 TFO Bagley met with Homeland Security Special Agent Greg

Kelly. SA Kelly confirmed that Hall's Apple iPhone, referred to as evidence item 2, was still in

the process of being examined using forensic tools. SA Kelly confirmed that the examination of

Hall's iPhone had produced over 150 image and video files of sexually explicit material of

pubescent and pre-pubescent aged children. The images and videos of sexually explicit material

depicted children engaged in sexual acts with themselves, other children and other adults. Some

of which were found to be sent to other users online by Hall's accounts and device. Three

examples of contraband files are attached to this affidavit. Exhibit 1, a still shot from a video, is

described below. Two additional images are described as follows:

a.  The video still shot photo titled "6908020707263043848" (Exhibit 1) was created

on the device with a date of February 20, 2022 and saved in users accessible data

in Hall's photo gallery. The image depicts a pubescent aged male child,

approximately 13-16 years of age, pulling his pants down in front of a camera,

exposing his penis and scrotum and buttocks to the camera. A text across the

screen reads "Shh". The child has been identified as Victim 1 by showing the

video file to Victim 1 on 09/07/2022.

b.  The photo titled "IMG_0275" (Exhibit 2) was created on the device with a date of

August 14, 2022 and saved in the users accessible data in Hall's photo gallery.

As stated above, "IMG_0275" depicts a prepubescent male child approximately

3-6 years old with his blue pants pulled down and the image is focused on the

child's erect penis.

28

c.  In addition, a photo titled "IMG_0277" was created on the device with a date of

August 14, 2022 and saved in the users accessible data in Hall's photo gallery.

"IMG_0277" depicts a prepubescent male child approximately 5 years old laying

on his back on a bed with his underwear around the child's calves.  The child's

underwear has a tag displaying "4T."  There appears to be an adult hand holding

the leg of the child with the focus of the image being the child's erect penis and

anus.  A copy of this image is attached under seal as Exhibit 3. The child in the

photo has been identified as Victim 4 and the image was created in North

Carolina with Victim 4.

89.     SA Mathieu viewed chat conversations found on evidence item 2 from the ESP of

Telegram.  In viewing the chat conversations, SA Mathieu found Hall's account was

communicating with a known sex offender living in Maine, here in identified as individual 1.

90.     On August 10, 2022, Hall tells Individual 1 that he thinks he is going to move

home. Individual 1 asks if he is coming back to Maine for good. Hall says he is tired of it here

[North Carolina].

91.     On August 13, 2022, Individual 1 asks Hall if he has had any luck. Hall tells

Individual 1 "not yet trying to get money together to come home."

92.     On August 16, 2022 at approximately 5:28 PM EST Hall messaged Individual 1

saying he was "in Maine." On August 17, 2022, Hall tells Individual 1 he is in "augusta."

93.     On August 20, 2022, HALL used the Telegram Messenger application to

communicate with Individual 1 regarding the sale/purchase of child sexual abuse material

(CSAM) from a 13-year-old. Hall advised Individual 1 that the child charged $5 dollars per CSAM image. Hall sends Individual one 4 images in the telegram application depicting what Hall says is a 13-year-old boy. The first image depicts the buttocks of the 13-year-old boy. The following three images are clothed images of the boy's face and buttocks. Individual 1 asks Hall, "Who's that?" Hall replies, "some 13 yr okd." Individual 1 asks Hall, "Any shots of his front side? Even though that ass is yummy" Halls says, "Trying I don't have the money lol.  its 5$ per pic." Individual 1 says, " he wants money for a dick pic lol. Wow. Where he from?  I thought you had made a new irl [in real life] friend lol."  Hall says, "Bo idk where he is." Individual 1 replies, "He cute though. One of the pics how he's laying on his own hand… I was like Dang Jon got a new friend lol.  If I send you $10 you think he show the front?" Hall says, "I'll attempt it."

94.    I believe that Verizon Wireless cell site location records for the period of May 28, 2022 to August 30, 2022 will confirm the locations Hall traveled and the times he entered the state of Maine. In July 2022, Hall communicates with Individual 1 regarding the receipt of a iPhone that Individual 1 is going to give him. On August 6, 2022 Hall sends an iMessage to Individual 1 stating he is "back on iphone thank you sooo much."

95.    On December 28, 2022, SA Mathieu issued a summons (HSI-BH-2022-051089) to Verizon Wireless. to produce subscriber information and call records for the phone number 207-707-0298 (SUBJECT PHONE) associated to Jon HALL and the iPhone X (evidence 2).

96.    On January 11, 2023, Verizon responded stating that the phone number is ported to TracFone. Verizon provided limited phone data below for 207-707-0298: Device ID (ICCID) #:8914800007079768624, IMEI: 354857093924426,  IMSI: 311480672006818 and Make/model: Apple iPhone X Silver 64 GB VZ.

97.     On January 12, 2023, SA Mathieu issued a summons (HSI-BH-2023-038293) to TracFone to produce subscriber information and call records for the phone number 207-707-0298 associated to Jon HALL and the iPhone X (evidence 2).

98.     On January 26, 2023 TracFone responded stating the phone number 207-707-0298 belongs to customer account ID ▮▮▮▮▮▮@gmail.com. The customer information provided on the purchase information is Jon HALL residing at ▮▮▮▮▮▮▮▮ in Morganton, NC. The SIM number provided is 89148000007079768624. The provided sim number matches the device ID on evidence item 2. The activation date of the service plan is July 6, 2022 and the date of deactivation is September 15, 2022.

99.     On January 17, 2023, SA Mathieu called TracFone to ask if TracFone or Verizon holds the cell site data when a phone is ported. TracFone confirmed that Verizon holds the data for the device.

100.    On February 3, 2023, SA Mathieu issued a summons (HSI-BH-2023-064513) to Verizon Wireless to produce subscriber information and call records for the phone number 828-502-3196 (SUBJECT PHONE) associated to Jon HALL and the iPhone X (evidence 2).

101.    On February 16, 2023 Verizon responded stating the SUBJECT PHONE 828-502-3196 is ported to Tracfone beginning May 28, 2022.

102.    On February 3, 2023, SA Mathieu issued a summons (HSI-BH-2023-064511) to TracFone to produce subscriber information and call records for the phone number 828-502-3196 (SUBJECT PHONE) associated to Jon HALL and the iPhone X (evidence 2).

31

103.     On February 17, 2023, TracFone responded stating the phone number 828-502-

3196 belongs to customer account ID ██████████ @gmail.com. The customer information

provided on the purchase information is Jon HALL residing at ██████████████ in

Granite Falls, North Carolina. The first activation date of the service plan is May 28, 2022 and

the date of deactivation is July 6, 2022. There is a reactivation date on the same day, July 6, 2022

with a deactivation date of September 15, 2022. The SIM number provided on the account is

89148000007079768624. The provided sim number matches the device ID on evidence item 2.

TracFone notes that the phone number was changed from 828-502-3196 to 207-707-0298 on

August 20, 2022. Both of the above accounts identified the customer account ID as

██████████ @gmail.com.

104.     Based on the above, I conclude that Hall was using phone number 828-502-3196

from May 28, 2022 to July 6, 2022, and phone number 207-707-0298 from July 6, 2022 to

September 15, 2022, and that both numbers were used consecutively on the same TracFone

account utilizing the Verizon wireless network.

105.     In my training and experience, I have learned that Verizon is a company that

provides cellular telephone access to the general public.  I also know that providers of cellular

telephone service have technical capabilities that allow them to collect and generate information

about the locations of the cellular telephones to which they provide service, including cell-site

data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received

a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the

towers) to which the telephone connected.  These towers are often a half-mile or more apart,

even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

106.    Based on my training and experience, I know that Verizon can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

107.    Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

33

## AUTHORIZATION REQUEST

108.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

109.    I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

110.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Abby Mathieu
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date:   **Mar 13 2023**

City and state:          Bangor, ME

John C Nivison U.S. Magistrate Judge
Printed name and title